UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARVIN L. BALL, JR.; and CORY BALL, in his personal capacity and as Caretaker of MARVIN L. BALL,<br><br>                    Plaintiffs,<br><br>v.<br><br>KOOTENAI COUNTY; KOOTENAI COUNTY SHERIFF'S OFFICE; CITY OF POST FALLS; CORRECTIONAL HEALTHCARE COMPANIES, INC., a Colorado corporation; CORRECTIONAL HEALTHCARE MANAGEMENT, a Delaware corporation; SCOT HAUG, Chief of the City of Post Falls Police Department; JASON DeWITT; ALANNA VESSER; and DOES I-X, each in their personal and representative capacities,<br><br>                    Defendants. | Case No. 2:14-cv-00246-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE (DKT. 93)** |

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—1**

# INTRODUCTION

Pending before the Court is the Motion to Strike Standard of Care Opinions by Donald Chilson, M.D., submitted in support of Plaintiff Marvin Ball's objection to motion for summary judgment (Dkt. 60), filed by Defendants Correctional Healthcare Companies, Inc., Correctional Healthcare Management, and Alanna Vesser.[1] (Dkt. 93.) The motion is fully briefed and ready for review. In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the motion will be decided on the record and without oral argument. Dist. Idaho. L. Rule 7.1(d).

# FACTUAL BACKGROUND[2]

On June 28, 2012, Officer Jason DeWitt tasered and arrested Ball in the parking lot of Ball's apartment complex.[3] At the time of his arrest, Ball was sixty-one years of age and allegedly had a history of arthritis, stroke, and chronic respiratory and cardiac conditions. When transporting Ball to the Kootenai County Jail, DeWitt allegedly observed a change in Ball's demeanor, profuse sweating and a blank stare and notified jail personnel of these observations upon arrival.

When Ball arrived at the jail, he was placed into a "safety cell," which Defendants allege, was for security reasons. Alanna Vesser, a Licensed Practical Nurse (LPN), was

---

[1] Although there are other Defendants in this action, the Court will refer to the three defendants that filed this motion as the "Medical Defendants" in this Order.

[2] The Court's order on the motion to strike comes before the District Judge's decision on the pending motions for summary judgment. This factual background is therefore taken from the Second Amended Complaint (Dkt. 46) and should not be construed as the Court accepting the facts as true or undisputed.

[3] The detailed events of the arrest are not relevant to the Court's resolution of the motion to strike.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—2**

assigned to assess Ball. However, Vesser's attempt to assess Ball was interrupted and she was ordered to leave his cell. Vesser allegedly did not resume her physical examination of Ball that evening. Over the next few days, Medical Defendants observed Ball on a daily basis; however, he was not assessed, evaluated, examined, or referred for further treatment until July 2, 2012, when Abby Larson, LPN, conducted an assessment of Ball in his cell and allegedly concluded Ball exhibited symptoms of a stroke.

Ball was transported to Kootenai Medical Center for evaluation, where it was later confirmed that he had had a stroke. Today, Ball, who is no longer incarcerated, requires around the clock assistance. Ball cannot talk, is incontinent, cannot walk without the aid of a walker and his right hand is paralyzed. Marvin Ball's son, Corey Ball, acts as his father's full time caretaker.

On July 27, 2015, Ball filed his Second Amended Complaint alleging, among other violations of 42 U.S.C. Section 1983, that the Medical Defendants acted with deliberate indifference by failing to provide Ball with immediate medical care upon his arrival at the Kootenai County Jail on June 28, 2012, and by delaying medical care and treatment to him until he was transported to Kootenai Medical Center on July 2, 2012. Ball claims these acts or omissions violated his rights under the Eighth Amendment to the Constitution of the United States. There are no professional negligence or other state law claims asserted against any of the Medical Defendants in the Second Amended Complaint.[4] (Dkt. 46.)

---

[4] The other violations are not relevant to this motion to strike, but include: unreasonable search and seizure, false arrest, and use of excessive force in violation of the Fourth Amendment, pursuant to Section

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—3**

## PROCEDURAL BACKGROUND

Pursuant to the Court's second and third amended scheduling orders, Ball's expert witness disclosures and expert reports were due July 6, 2015, Defendants' expert witness disclosures and expert reports were due October 4, 2015, and the rebuttal expert witness disclosure deadline was November 3, 2015. (Dkts. 31, 51.)

On July 10, 2015, Ball served his initial expert witness disclosures.[5] Within his initial disclosure, Ball disclosed Donald Chilson, M.D., a cardiologist, as an expert witness. Ball's initial disclosures did not expressly include a correctional nurse expert, nor were Ball's expert witness disclosures supplemented to include one. Defendants filed their initial expert witness disclosures on October 2, 2015, disclosing Kathy Wild as a correctional nursing expert. (Dkt. 93-3 at 3.) On December 7, 2015, Defendants filed a motion for summary judgment seeking to dismiss all claims asserted against them by Ball in the Second Amended Complaint. (Dkt. 60.)

On January 20, 2016, Defendants conducted a deposition of Ball's expert witness, Dr. Chilson. On March 9, 2016, when Ball filed his response to Defendants' motion for summary judgment,[6] Ball submitted certain excerpts from Dr. Chilson's deposition in support of his response. Specifically, Ball cites to and relies upon certain testimony and

---

1983. The Second Amended Complaint includes also a Fourteenth Amendment claim and state law negligence claims against the other Defendants. (Dkt. 46.)

[5] While Defendants dispute the timeliness of Dr. Chilson's disclosure of certain opinions expressed by Dr. Chilson during his deposition, Defendants do not dispute the timeliness of Ball's initial expert disclosures.

[6] Ball's response was timely, as he was provided an extension. (Dkt. 91.)

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—4**

opinions expressed by Dr. Chilson in his deposition, summarized in Ball's response brief as follows:

> Dr. Chilson is board certified in cardiology and internal medicine, and has practiced in this jurisdiction for 22 years. In pertinent part, Dr. Chilson stated the following: (1) the signs and symptoms exhibited by Marvin Ball, Jr. upon his arrival at the Kootenai County Jail on June 28, 2012 required immediate evaluation at a medical facility, regardless of the genesis of those signs and symptoms; (2) the signs and symptoms exhibited by Mr. Ball were such that even a lay person would suspect he was suffering a stroke; (3) the signs and symptoms exhibited by Mr. Ball required immediate neurological assessment by Ms. Vesser; (4) placing an oximeter on Mr. Ball's finger or looking at him through the cell window was an insufficient assessment; and (5) failing to perform an adequate neurological assessment prior to July 2, 2012 was profoundly negligent.

(Dkt. 92 at 9.)

On March 28, 2016, the Medical Defendants filed a motion to strike Dr. Chilson's deposition testimony and opinions to the extent they relate to the conduct or omissions of the Medical Defendants. (Dkt. 93.) At issue is the admissibility of the excerpts of Dr. Chilson's deposition testimony filed by Ball in support of his response to the motion for summary judgment.

## STANDARD OF LAW

On summary judgment, to support their claim or defense, a party asserting that a fact cannot be or is genuinely disputed must cite to particular parts of materials in the record, including depositions, documents, affidavits or declarations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, an adverse party can demonstrate that the other party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1) (B). An opposing party may object that material

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—5**

cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

As to the parties filing motions to strike as a means of objecting to the evidence submitted in support of or against a pending motion for summary judgment, the Advisory Committee Notes to the 2010 amendments to Rule 56 provide that a Rule 56(c)(2) objection "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike." Fed.R.Civ.P. 56 advisory committee's note (2010 Amendments).

Motions to strike are limited to pleadings, which are defined by Federal Rule 7(a); statements made in depositions used in support of, or in opposition to, a motion for summary judgment are not pleadings. *See Albertson v. Fremont County, Idaho,* 834 F.Supp.2d 1117, 1123 n. 3 (D. Idaho 2011). Accordingly, the motion to strike filed by the Medical Defendants will be construed as an objection to the excerpts of Dr. Chilson's deposition testimony filed by Ball in support of his response to the motion for summary judgment filed by the Medical Defendants. *Shelton v. Reinke*, No., 2013 WL 1319630, at *11 (D. Idaho Mar. 28, 2013), *aff'd,* 585 F. App'x 359 (9th Cir. 2014).

## DISCUSSION

The Medical Defendants seek to strike Dr. Chilson's deposition testimony to the extent his testimony and opinions relate to the conduct and standard of care applicable to Vesser and other nursing staff of Correctional Healthcare Services that may have

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—6**

attended to Ball during his initial days at the Kootenai County Jail. Defendants make three arguments in support of their request that the Court strike Dr. Chilson's opinions about "nursing standards and correctional healthcare" as follows: "(1) Plaintiffs never disclosed Dr. Chilson's opinions about correctional nursing standards in his initial report, (2) Dr. Chilson is unqualified to render such opinions, and (3) Dr. Chilson has no basis, foundation or facts to establish such opinions." (Dkt. 93-1 at 2.) The Court will address each argument in turn. [7]

## I. Ball timely Disclosed Dr. Chilson's Opinions

Defendants allege that, during his deposition, Dr. Chilson offered, for the first time, opinions regarding nursing and correctional healthcare standards and whether they were met by the Medical Defendants. They argue that, because these opinions were not included in Dr. Chilson's initial expert witness report, or later supplemented in the expert witness disclosure, the doctor's opinions should be disregarded as untimely pursuant to Fed. R. Civ. P. 37(c)(1). Ball disagrees, and contends Dr. Chilson's expert witness report encompassed the opinions expressed during his deposition. For the following reasons, the Court will deny the Medical Defendants' request to strike these opinions from the record to be considered by the District Judge when addressing the motion for summary judgment.

---

[7] The Medical Defendants' reply in support of their motion goes beyond the motion to strike as the Medical Defendants appear to take the opportunity in their reply to argue points raised in their motion for summary judgment. For instance, the Medical Defendants do not assert in their motion to strike (but make the argument in their reply) that Dr. Chilson is not qualified to offer testimony regarding Correctional Healthcare Company's policies. (Dkt. 98.) Accordingly, these arguments were not considered in this motion.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—7**

Fed. R. Civ. P. 26(a)(2)(B)(i) requires that initial expert witness reports contain a "compete statement of all opinions the witness will express and the basis and reasons for them." If expert disclosure rules are violated, Fed. R. Civ. P. 37(c)(1) explains the consequences:

> If a party fails to provide information or identify a witness as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Medical Defendants object to Ball's reliance in opposing summary judgment on the following opinions expressed by Dr. Chilson during his deposition:

- That the signs and symptoms exhibited by Marvin Ball, Jr. upon his arrival at the Kootenai County Jail on June 28, 2012, required immediate evaluation at a medical facility, regardless of the genesis of those signs and symptoms;

- That the signs and symptoms exhibited by Mr. Ball were such that even a lay person would suspect he was suffering a stroke;

- That the signs and symptoms exhibited by Mr. Ball required immediate neurological assessment by Ms. Vesser;

- Placing an oximeter on Mr. Ball's finger or looking at him through a jail cell window was an insufficient assessment; and

- Failing to perform an adequate neurological assessment prior to July 2, 2012, was "profoundly negligent."

(Dkt. 93 at 2.)

In response to Defendants' motion to strike, Ball provided the following excerpt from Dr. Chilson's expert witness report to demonstrate that the opinions expressed by

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—8**

Dr. Chilson in his deposition were disclosed and encompassed within Dr. Chilson's report:

**Summary of Conclusions**[8]

> It is my opinion, on a more probable than not basis to a reasonable degree of medical probability, that Mr. Ball suffered a devastating cerebral vascular accident (CVA) i.e. stroke that was ignored by medical staff…while in the custody at the Kootenai County Jail. Had the change in mentation and physical deterioration been evaluated, diagnosed and treated when such change became apparent, Mr. Ball's outcome with (sic) have been much less devastating.
>
> Further, it is beyond question that Mr. Ball would have benefitted from prompt evaluation of his symptoms, and emergent transport to a hospital for treatment, thereby diminishing the severe deterioration of his motor skills, bodily functions and loss of speech caused by the delay in conducting the proper physical examination performed on July 2, 2012. If the physical examination performed on July 2, 2012 had been performed at the time he began exhibiting impaired speech, balance and cognitive symptoms, a nurse with the most limited training would have adduced the likelihood of a cardiovascular event and sought immediate emergent care of the patient. The failure to conduct or permit such an evaluation, and transport to a hospital from June 28, 2012 to July 2, 2012, constituted deliberate indifference by the medical staff…in regard to the obvious signs and symptoms of a CVA exhibited by Mr. Ball while at the Kootenai County Jail.

(Dkt. 96.)

Defendants cite to *Trowbridge v. United States*, 2009 WL 1813767, at *2 (D. Idaho June 25, 2009), a medical malpractice action where U.S. Magistrate Judge Bush decided, on a motion in limine, to exclude certain standard of medical care opinions expected from one of the plaintiff's expert witnesses that were not disclosed in the

---

[8] Neither party submitted Dr. Chilson's expert report in its entirety into the record.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—9**

expert's report.[9] However, the Medical Defendants fail to articulate or argue why, or how, the opinions expressed by Dr. Chilson during his deposition that are the subject of their objection are not covered within the above summary taken from Dr. Chilson's expert report.

Upon review of the excerpts of both Dr. Chilson's report and his deposition provided by Ball, the Court finds Dr. Chilson opines that: upon Ball's arrival at the Kootenai County Jail, Ball exhibited symptoms of a stroke, those symptoms were obvious, and a nurse with limited experience and training would have recognized Ball's symptoms and would have known that Ball required immediate medical attention. With regard to the more specific opinions expressed by Dr. Chilson in his deposition, the Court finds the same are encompassed within scope of the opinions rendered by Dr. Chilson in his expert report. Further, the Medical Defendants make no claim that Dr. Chilson's expert report is deficient under Rule 26–only that Dr. Chilson is not qualified to express opinions on what they characterize as nursing or correctional medicine standards of care. Accordingly, the Court will deny the Medical Defendants' request to exclude Dr. Chilson's opinions from the Court's consideration in connection with their motion for summary judgment on their argument of non-disclosure.

---

[9] In *Trowbridge*, the Court noted that, "Plaintiffs did not submit in their response to this motion any portions of Dr. Hall's deposition testimony where he discussed the standards of care related to the maternal fever/chorioamnionitis." *Trowbridge v. United States*, 2009 WL 1813767, at *12 (D. Idaho June 25, 2009).

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—10**

## II. Medical Defendants have failed to establish that Dr. Chilson is not qualified to render the opinions in his expert report

The Medical Defendants next argue that Dr. Chilson is not qualified to render opinions in this case because Ball must have a correctional medicine expert witness, or someone familiar with correctional nursing standards of care to prove the deliberate indifference element of his Eighth Amendment and the associated *Monell* claim brought against them under Section 1983. The Medical Defendants contend that, because Dr. Chilson is not an LPN and has little to no experience in correctional healthcare, he is unqualified, or otherwise not credible, to offer opinions about whether Vesser's treatment (or lack thereof) of Ball was deliberately indifferent, and whether the policies or customs of the Defendant Healthcare Companies were deliberately indifferent to Ball's constitutional right to receive adequate medical care.

Unlike Idaho's medical malpractice statutes,[10] expert testimony is not always required in prisoner medical treatment cases brought pursuant to Section 1983. *Sanders v. York*, 446 F. App'x 40, 43 (9th Cir. 2011) (expert evidence is not required to prove deliberate indifference). In circumstances where an expert witness does testify in such cases, there are no additional qualifications that the expert witness must satisfy beyond those in Fed. R. Evid. 702. Here, the Medical Defendants challenge Dr. Chilson's lack of

---

[10] Pursuant to Idaho Code § 6-1012, in a medical malpractice case, the plaintiff is required to "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Moreover, the statue provides also that the expert witness must: "be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any." I.C. § 6-1012.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—11**

experience as an LPN or correctional medicine expert, but do not challenge his qualifications as a cardiologist with regard to his opinions that arguably go to causation of the injuries Ball alleges in this action. Moreover, the Medical Defendants have not supported their argument with statutory or case law establishing or suggesting that the Court, in connection with an Eight Amendment deliberate indifference claim brought pursuant to Section 1983, must apply evidentiary standards prescribed by Idaho's medical malpractice statutes.

Additionally, the Medical Defendants' argument that expert testimony is required to prove the deliberate indifference element of Ball's constitutional claims brought pursuant to Section 1983 is not supported by Ninth Circuit law—no such requirement exists.[11] To the extent they attempt to rely on *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988), for the proposition that expert testimony is "required to establish the necessary level of deliberate indifference" (Dkt. 93-1 at 6), their argument is misplaced. In *Hutchinson*, the Ninth Circuit concluded, in connection with a state-law medical negligence claim, that "when the defendant supports his motion for summary judgment with the declarations of experts, a plaintiff who has presented no expert evidence concerning the required standard of care has failed to make a sufficient showing that

---

[11] Although not generally required in prisoner medical treatment cases, courts have found that the use of a medical expert witness may be necessary, in some cases, to prove the seriousness of the medical injury or causation. *See e.g., Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (here, prisoner claimed deliberate indifference to serious medical need—the Eighth Circuit held: "When an injury is sophisticated, proof of causation generally must be established by expert testimony…. Plaintiff's failure to produce expert testimony to prove that the lapse in medication caused his stroke is therefore fatal to his deliberate indifference claim as a matter of law.").

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—12**

there are no genuine factual issues for trial." Unlike this case, the plaintiff in *Hutchinson* alleged medical negligence against the health care defendants. *Id.* In addition, the court in *Hutchinson* did not hold that expert testimony was required to prove deliberate indifference, but found only that plaintiff had failed to present sufficient evidence beyond her own testimony, on any of her claims to withstand summary judgment. *Id.* at 392-94.

Likewise, the Medical Defendants have not cited a single authority where a district court excluded an otherwise qualified expert from testifying on the basis: (1) that the physician is incompetent to testify to the standard of care for licensed practical nurses in the context of a deliberate indifference claim; or (2) that the physician had not practiced medicine in a correctional setting. Rather, to testify as an expert witness in a prisoner medical treatment action pursuant to Section 1983, the Court need only find that Dr. Chilson is "qualified [to the issues presented] as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Without review of the full expert report and consideration of the entirety of Dr. Chilson's qualifications, the Court is not in a position to find that Dr. Chilson is not qualified to testify to the opinions expressed in his report and during his deposition that have been placed in the record for the Court's resolution of the motion for summary judgment. Accordingly, the Court will deny Defendants' request to exclude Dr. Chilson's opinions on the purported ground that he is not qualified to offer them.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—13**

## III. The Court cannot determine whether Dr. Chilson has sufficient factual foundation for his opinions

The Medical Defendants, without citing legal authority, contend Dr. Chilson's expert opinions are inadmissible because his opinions lack the necessary basis, and the proper foundation and factual support. This argument, however, is not a proper ground to exclude Dr. Chilson's opinion, along with the record as a whole, from consideration by the District Judge when deciding the motion for summary judgment.

Federal Rule of Evidence 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703

The Court does not know what factual information or data Dr. Chilson relied upon when reaching and providing the opinions and deposition, as neither party submitted the entirety of Dr. Chilson's expert report or deposition into the record. The Medical Defendants provide only a short excerpt of the deposition testimony where Dr. Chilson appears to have difficulty reciting the factual specifics regarding Vesser's assessment of Ball. However, it is not clear in the record that Dr. Chilson's testimony lacked a sufficient foundation. Further, at this point, the Court has not determined what facts are disputed and undisputed.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO STRIKE—14**

This argument by the Medical Defendants may appropriately go to the weight of Dr. Chilson's testimony, as opposed to admissibility, which is for the Court to determine in the first instance upon review of the record as a whole. Accordingly, the Court will deny the Medical Defendant's motion to strike on this ground.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) The Medical Defendants' Motion to Strike Standard of Care Opinions by Donald Chilson, M.D. (Dkt. 93) is **DENIED.**

Dated: **September 16, 2016**

Honorable Candy W. Dale
United States Magistrate Judge